# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN YERKE,<br>    Plaintiff | 3:14cv900 |
|     v. | (Judge Munley) |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br>    Defendant | |

## MEMORANDUM

Before the court for disposition is Plaintiff Susan Yerke's (hereinafter "Yerke") appeal of the Defendant Commissioner of Social Security's (hereinafter "Commissioner") denial of her application for disability insurance benefits.[1]  (Doc. 1).

**Background**

On May 8, 2012, Yerke filed an application for disability insurance benefits due to diabetes, hypertension, hyperlipidemia, obesity, chronic obstructive pulmonary disease, anxiety, depression and hip pain.  (Doc. 6, Admin. R. (hereinafter "R.") at 13).[2]  In her application, Yerke alleges her disability began on June 2, 2009.  (R. at 10).  On October 17, 2012, the Bureau of Disability Determination denied Yerke's application.  (Id.)  Yerke

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  42 U.S.C. §§ 415(a) and 416(i)(1).  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  See 42 U.S.C. § 416(i)(2).  Here, the record establishes that Yerke's date last insured is June 30, 2009.  (R. at 12).

[2] References to "R. at __" are to pages of the administrative record filed by the Defendant as part of her Answer on July 8, 2014.

then filed a request for a hearing before an administrative law judge (hereinafter "ALJ").

The ALJ held a hearing on October 9, 2013.  (R. at 22-50).  At the hearing, the ALJ noted that Yerke was fifty-seven (57) years old with limited education.  (R. at 31, 34).  Yerke graduated high school and can read, write, speak and understand the English language.  (R. at 34).  After high school, Yerke attended some vocational school for medical terminology and obtained secretarial certification.  (Id.)

Yerke testified that she lives with her retired husband, son, daughter-in-law and three grandchildren.  (R. at 14).  She shops in stores, reads, watches television and is able to pay her bills.  (Id.)  Yerke also stated that she only sleeps two hours at a time because of pain in her right hip.  (R. at 46).

In a decision issued October 25, 2013, the ALJ denied Yerke's claim, finding that she was not "disabled" as of June 30, 2009 and thus not entitled to benefits.  (R. at 18).  Yerke requested the Appeals Council review the ALJ's decision.  On March 26, 2014, the Appeals Council denied Yerke's request for review.  (R. at 1-5).  Thus, the ALJ's decision stood as the Commissioner's final decision.[3]  As a result of the Commissioner's denial of disability

---

[3] The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless a claimant files an action in federal district court within 60 days after receiving notice of the Appeals Council's action.  20

2

insurance benefits, Yerke filed an appeal in this court on May 9, 2014.[4] The parties then briefed the issues bringing the appeal to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over the Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has her principal place of business . . . .").

---

C.F.R. § 404.981.

[4] Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

**Standard of Review**

In reviewing a social security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court defines "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  The Third Circuit Court of Appeals explains that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when an ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Another critical requirement is that the Commissioner adequately develop the record. Poulous v. Comm'r of Soc. Sec., 474 F.3d 88, 95 (3d Cir. 2007) (reminding ALJs of their duty to develop the record); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (stating that ALJs have an affirmative duty to develop a full and fair record in social security cases). If the record is not adequately developed, remand for further proceedings is appropriate. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step sequential analysis to evaluate a claim for disability insurance benefits. 20 C.F.R. § 404.1520(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity;[5] (2) has an impairment,

---

[5] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is engaging in "substantial gainful activity," the claimant is not disabled and the sequential evaluation proceeds no further.

or combination of impairments, that is severe;[6] (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment;" (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity.[7] 20 C.F.R. § 404.1520(a)(4)(iv).

---

[6] A "severe impairment" significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic physical work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).
　　The determination of whether a claimant has any severe impairment that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509 and 404.1520(c). If a claimant does not have any severe impairment or combination of impairments which significantly limits her physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. Id.
　　If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. § 404.1523 and 404.1545(a)(2).

[7] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

7

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See SSR 96-8p, 1996 WL 374184.[8] A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. Id. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R.§ 404.1545; Fargnoli, 247 F.3d at 40 (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

**Discussion**

Based upon the medical records and testimony, the ALJ at step one of the sequential evaluation found that Yerke has not engaged in substantial gainful activity from her alleged onset date, June 2, 2009, through her date last insured, June 30, 2009. (R. at 12). The ALJ next determined at step two that Yerke had the following medically determinable impairments: diabetes, hypertension, hyperlipidemia, obesity, chronic obstructive pulmonary disease,

---

[8] Social Security Rulings (hereinafter "SSR") constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. Molina v. Astrue, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012); Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999). SSRs do not have the force of law, id.; nevertheless, once published, they are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); Boone v. Barnhart, 353 F.3d 203, 210 n.16 (3d Cir. 2003); 20 C.F.R. § 402.35(b)(1).

anxiety and depression. (R. at 13). The ALJ, however, concluded that Yerke's medically determinable impairments were not severe impairments because they did not limit her ability to perform basic work related activities for twelve (12) consecutive months. (R. at 13-17); 20 C.F.R. §§ 404.1520(c) and 404.1521. As such, the ALJ determined that Yerke was not disabled within the meaning of the Social Security Act.[9]

In the instant matter, Yerke does not appeal the ALJ's determination that her medically determinable impairments are not severe impairments. Rather, Yerke's sole contention in the instant appeal is that the ALJ improperly determined that her right hip was a non-medically determinable impairment at step two of the sequential evaluation.

To qualify for disability at step two, the claimant must have a severe impairment "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's

---

[9] The ALJ also determined at step two that Yerke's right hip was a non-medically determinable impairment. (R. at 14). Whether Yerke's right hip is a medically determinable impairment is the sole issue in the instant appeal.

9

ability to work.'" Id. (quoting SSR 85-28, 1985 WL 56856, at *4).[10]

"Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two." Id. (quoting Bowen v. Yuckert, 482 U.S. 137, 158, (1987) (O'Connor, J., concurring)). If the claimant can present evidence presenting more than a "slight abnormality," the severity requirement is met. Id. Further, any reasonable doubts in step two should be resolved in the claimant's favor. Id. But, a reviewing court should not apply a more stringent standard of review. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). If the plaintiff cannot prove a severe impairment, disability benefits must be denied.

In McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004), the Third Circuit Court of Appeals reiterated that the "burden placed on an applicant at step two is not an exacting one." Although the social security regulations speak in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Id. (citing SSR

---

[10] SSR 85-28 states that "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." 1985 WL 56856, at *4.

85-28, 1985 WL 56856, at *3).

McCrea instructs that the determination of whether an applicant has met her burden at step two in the sequential analysis should focus upon her evidence. If such evidence demonstrates that the applicant has "more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." McCrea, 370 F.3d at 362; 20 C.F.R. § 404.1520(d)-(f).

In the instant matter, the objective medical evidence fails to support the ALJ's determination that Yerke's right hip was a non-medically determinable impairment prior to June 30, 2009. Yerke's objective medical evidence establishes that she treated with doctors at Wayne Memorial Hospital regarding right hip pain on September 18, 2008. (R. at 601). An x-ray established a mild narrowing of the superior aspect of the right acetabulum, but no avascular necrosis of the hip. (Id.) Stated differently, the protective cartilage in Yerke's hip was wearing down (narrowing), but her bone tissue was still alive (no avascular necrosis). Yerke met with her doctor on March 23, 2009, discussed her x-ray, and stated that she was "feeling well without any specific complaints." (R. at 438).

At the ALJ hearing, Yerke testified that she started having some problems with her right hip in June 2009. (R. at 39). Specifically, Yerke "could not put weight on [her right leg] anymore . . . and when I was walking it

11

would just give out or lock up and sharp pain like a spear in my side." (Id.) Furthermore, Yerke testified that in June 2009 she had difficulty putting weight on her right leg and had problems sitting comfortably because of pain inside her right hip. (R. at 40-41). Finally, Yerke stated that she could only sleep two hours at a time because of pain in her right hip. (R. at 46).

In short, a review of the entire record demonstrates that the ALJ failed to resolve in Yerke's favor "[a]ny doubt" regarding whether her right hip symptoms were severe. McCrea, 370 F.3d at 360. Because the record in its entirety does not provide substantial evidence to support the ALJ's determination at step two, the court will vacate the Commissioner's decision and remand the case for further proceedings pursuant to 42 U.S.C. § 405(g).

**Conclusion**

For the above-stated reasons, the court finds that substantial evidence does not support the Commissioner's decision. Specifically, the objective medical evidence establishes that Yerke's right hip was a medically determinable impairment before June 30, 2009. Ergo, the court will vacate the Commissioner's decision and remand the case for further proceedings pursuant to 42 U.S.C. § 405(g). An appropriate order follows.

**Date: 2/26/2015**                    **s/ James M. Munley**
                                       **JUDGE JAMES M. MUNLEY**
                                       **United States District Court**